IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| WALTER EVERRET MOORE, III, <br><br> Plaintiff, <br><br> v. <br><br> SGT. DUGGER, et al., <br><br> Defendant. | CIVIL ACTION NO.: 6:18-cv-77 |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants Teyundra Hamilton, Laura Patton, LaShawna Dugger, and Latrelle Heard's Motion for Summary Judgment. Doc. 49. Plaintiff filed a Response in opposition. Doc. 52.[1] For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment, **DISMISS** Plaintiff's claims for injunctive relief, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment, and **DENY** Plaintiff *in forma pauperis* status on appeal.

**PROCEDURAL HISTORY**

Plaintiff brought this 42 U.S.C. § 1983 action to challenge certain conditions of his confinement while he was housed at Georgia State Prison in Reidsville, Georgia. Doc. 1. After conducting frivolity review, the Court dismissed Plaintiff's claims for monetary damages against Defendants in their official capacities and Plaintiff's deliberate indifference to serious medical needs claim against Defendant Allen. Docs. 18, 23. However, the Court permitted Plaintiff to

---

[1] Defendants filed their Motion for Summary Judgment on January 15, 2021, and Plaintiff's Response was due on February 5, 2021. Doc. 49. The Court received Plaintiff's Response on March 5, 2021. Doc. 52. However, Plaintiff's Response is dated on February 1, without an explanation for the long delay. Id. Regardless of timeliness, I have fully considered Plaintiff's Response.

proceed with his deliberate indifference claims against Defendants Dugger, Heard, and Patton. Docs. 18, 23. Additionally, the Court permitted Plaintiff to proceed against an unknown officer, later identified as Defendant Hamilton. Docs. 19, 25.

In Plaintiff's Complaint, he alleges Defendants Dugger, Hamilton, Heard, and Patton were deliberately indifferent to his serious medical needs, violating the Eighth Amendment. Doc. 1 at 1. Plaintiff states he informed Defendant Dugger and Heard he was feeling suicidal and in response, they informed him someone would come talk to him, but no one came. Later that day, Plaintiff alleges he cut his right upper arm. According to Plaintiff, when Defendant Patton arrived to perform an inmate count, Plaintiff told her he had cut himself, and she told him she did not care and left. Similarly, Plaintiff allegedly informed Defendant Heard he cut himself, and Defendant Heard told him to tell the next shift. Plaintiff alleges he told Defendant Hamilton the same, and Defendant Hamilton likewise acknowledged him but did nothing. Plaintiff alleges he did not receive medical attention until the next day, more than 18 hours after cutting himself, when Sergeant Woods brought Plaintiff to the medical ward for treatment. Id.

## UNDISPUTED MATERIAL FACTS

Local Rule 56.1 of the Southern District of Georgia provides a party moving for summary judgment must include "a separate, short, and concise statement of the material facts as to which it is contended there exists no genuine dispute to be tried as well as any conclusions of law thereof." Local R. 56.1. Defendants submitted a Statement of Material Fact in support of their Motion for Summary Judgment, in accordance with the Federal Rules of Civil Procedure and Local Rule 56.1. Doc. 49-1. Defendants' Statement of Material Facts ("SMF") relies on declarations from Crystal Hendley, Defendant Hamilton, and Defendant Patton and a transcript of Plaintiff's deposition. Docs. 49-3 to 49-6.

Plaintiff filed a two-page Response to Defendants' Motion for Summary Judgment. Doc. 52. Plaintiff's Response consists of four enumerated paragraphs, containing largely conclusory arguments, without citations to evidence in the record. Id. at 1–2. Plaintiff did not submit any exhibits or other evidence with his Response. Because Plaintiff did not satisfy Local Rule 56.1 by filing a response to Defendants' Statement of Material Facts, all facts proffered by Defendants which have evidentiary support in the record are hereby deemed admitted. See Local R. 56.1; Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849–50 (11th Cir. 2011) (finding no error in deeming defendants' material facts admitted where pro se prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections); Scoggins v. Arrow Trucking Co., 92 F. Supp. 2d 1372, 1373 n.1 (S.D. Ga. 2000) (finding, under L.R. 56.1 and Eleventh Circuit precedent, "all unopposed fact statements supported by the evidentiary materials of record are deemed admitted").

In light of these circumstances, and after reviewing the parties' submissions, the Court identifies the following undisputed, material facts for the purposes of evaluating Defendants' Motion for Summary Judgment:

Plaintiff is a state prisoner, currently incarcerated at Phillips State Prison in Buford, Georgia. Doc. 49-1 at 1; Doc. 49-4 at 17–19. However, at the time relevant to Plaintiff's deliberate indifference claim, he was housed at Georgia State Prison ("GSP"). Doc. 49-1 at 1; Doc. 1; Doc. 49-4 at 18. Defendants Hamilton, Patton, Dugger, and Heard were correctional officers at GSP during the events giving rise to Plaintiff's Complaint. Doc. 49-1 at 1–2; Doc. 33. As Georgia Department of Corrections' employees, Defendants have been trained to alert medical or mental health staff if an inmate informs them he is going to harm himself or has harmed himself. Doc. 49-1 at 3; Doc. 49-5 at 2; Doc. 49-6 at 2.

On April 4, 2018, Plaintiff was depressed and angry. Doc. 49-1 at 2; Doc. 49-4 at 20–21. Plaintiff felt this way due to receiving treatment, in the form of shots, as part of his mental health care. Doc. 49-1 at 2; Doc. 49-4 at 18–20. At around 8:30 a.m. on April 4, 2018, Plaintiff told Defendants Dugger and Heard he was depressed and was going to try cut and kill himself. Doc. 49-1 at 2; Doc. 49-4 at 21, 35. In response to Plaintiff's complaints, Defendants Dugger and Heard told Plaintiff they were going to get him help and get someone from the mental health unit to speak with him. Doc. 49-1; Doc. 49-4 at 31, 35. Later that day, between 3:00 and 3:50 p.m., Plaintiff cut himself on his upper right arm. Doc. 49-1 at 3; Doc. 49-4 at 35. Plaintiff's cut was a one-inch laceration. Doc. 49-3 at 5. That evening, Plaintiff told Defendant Hamilton he cut himself, to which Defendant Hamilton replied she was going to call somebody to help Plaintiff. Doc. 49-1 at 2; Doc. 49-4 at 23. Defendant Hamilton checked on Plaintiff multiple times throughout the night, asking him if he was all right. Doc. 49-1 at 3; Doc. 49-4 at 23–25.

The next morning, on April 5, 2018, Plaintiff was taken to the medical unit and treated for a one-inch self-inflicted laceration, which included cleaning and bandaging the wound and applying ointment. Doc. 49-1 at 3; Doc. 49-4 at 31–32; Doc. 49-3 at 5. Plaintiff returned to his cell after one hour in the medical unit. Doc. 49-1 at 3; Doc. 49-4 at 32.

## DISCUSSION

### I. Legal Standard

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury

question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)). "If the evidence [produced by the nonmoving party] is merely colorable or is not significantly probative summary judgment must be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 249 (1986) (citations omitted).

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). Once the party moving for summary judgment satisfies its initial burden, the burden shifts to the non-moving party to come forward with specific facts showing a genuine dispute for trial. Hinson v. Bias, 927 F.3d 1103, 1115 (11th Cir. 2019). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011).

**II.    Qualified Immunity**

Defendants argue they are entitled to qualified immunity because they were performing discretionary functions as government officials and their conduct did not violate "clearly established law."  Doc. 49-2 at 7.  Plaintiff offers no specific response to Defendants' qualified immunity argument.  Instead, Plaintiff's briefing is limited to a conclusory argument, stating Defendants in fact violated his constitutional rights.  Doc. 52.

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see also Lee v. Ferraro, 284 F.3d 1188, 1193–94 (11th Cir. 2002).  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation . . . ."  Lee, 284 F.3d at 1194.

This defense "reflects an effort to balance 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'"  Jones v. Fransen, 857 F.3d 843, 850–51 (11th Cir. 2017) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)).  "The doctrine resolves this balance by protecting government officials engaged in discretionary functions and sued in their individual capacities unless they violate 'clearly established federal statutory or constitutional rights of which a reasonable person would have known.'"  Id. at 851 (quoting Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010)).

"As a result, qualified immunity shields from liability 'all but the plainly incompetent or one who is knowingly violating the federal law.'"  Id. (quoting Lee, 284 F.3d at 1194).

However, "the doctrine's protections do not extend to one who 'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff].'" Id. (quoting Harlow, 457 U.S. at 815 (internal quotation marks and alteration omitted)). Additionally, "[b]ecause qualified immunity is only a defense to personal liability for monetary awards resulting from government officials performing discretionary functions, qualified immunity may not be effectively asserted as a defense to a claim for declaratory or injunctive relief." Ratliff v. DeKalb County, 62 F.3d 338, 340 n.4 (11th Cir. 1995).

To receive qualified immunity, government officials must first establish they were acting within their discretionary authority during the events in question. Maddox v. Stephens, 727 F.3d 1109, 1120 (11th Cir. 2013). Discretionary authority includes all actions of a governmental official that "(1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." Dang ex rel. Dang v. Sheriff, Seminole Cnty., 871 F.3d 1272, 1279 (11th Cir. 2017) (citing Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988)).

Here, Plaintiff does not contest Defendants were acting within their respective discretionary authorities. Indeed, it is undisputed Defendants were acting as correctional staff at GSP at the time of the incident in question, and everything in the record demonstrates Defendants' actions were undertaken pursuant to the performance of their duftites and were within the scope of their authority. Doc. 49-2 at 7.

Because Defendants were acting within their discretionary authority, the burden shifts to Plaintiff to show qualified immunity does not apply. Terrell v. Smith, 668 F.3d 1244, 1250 (11th Cir. 2012). In determining whether qualified immunity applies, a court engages in a two-step inquiry, assessing: (1) whether the plaintiff alleged facts to establish the officers violated

constitutional rights; and (2) whether the right was clearly established. Pearson, 555 U.S. at 232. Federal courts have discretion in deciding which prong to address first. Id. at 236.

In this case, the Court finds it appropriate to first address whether the right was clearly established. A constitutional right is clearly established if "a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); see also Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993) ("If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant."). Therefore, "if the constitutional right has been clearly established, the plaintiff must demonstrate that a reasonable government actor would have known that what he was doing infringed that right." Chesser v. Sparks, 248 F.3d 1117, 1122 (11th Cir. 2001).

As explained above, the burden is on Plaintiff to demonstrate the right was clearly established at the time of the alleged violation. See Pearson, 555 U.S. at 232. Plaintiff needs to show there is case law binding in the circuit that clearly establishes a constitutional right. See Plumhoff v. Rickard, 527 U.S. 765, 780 (2014) ("[R]espondent has not pointed us to any case—let alone a controlling case or a robust consensus of cases . . . that could be said to have clearly established the unconstitutionality of using lethal force to end a high-speed car chase."). Plaintiff has not cited to any cases to show case law was clearly established. Nor is the Court able to locate any cases clearly establishing the actions of Defendants in this case—telling Plaintiff they will alert mental health officials and repeatedly checking on Plaintiff—violate Plaintiff's constitutional rights, especially where Plaintiff's physical injuries were non-life threatening and did not result in a completed suicide. Morrill v. Holmes Cnty. Jail, Case No. 5:15-cv-324, 2018 WL 7082149, at *12 (N.D. Fla. Jan. 30, 2018) (finding no constitutional violation where there was no evidence defendant was subjectively aware of plaintiff's self-harm tendencies prior to

him hurting himself and once plaintiff self-harmed, defendant called EMS); Moore v. Hunter, ___ F. App'x ___, 2021 WL 797803, at *2 (11th Cir. 2021) (affirming a district court grant of summary judgment where there was no evidence officers deliberately delayed or denied plaintiff access to mental health treatment and instead at best acted negligently); cf. Dudley v. Singleton, ___ F. Supp. 3d. ___, 2020 WL 7401591, at *10 (N.D. Fla. Dec. 17, 2020) (holding defendants were subjectively aware of plaintiff's risk of serious mental health needs where defendants saw plaintiff kicked his cell door and informed them he did not "feel right," defendants knew plaintiff had untreated bipolar disorder and a history of severe mental illness, had violently opposed authority and exhibited aggression with law enforcement, had tossed food in the detoxification cell while shirtless resulting in restraint in a psychiatric chair, and had incurred an assault from other detainees)  Consequently, Plaintiff has not shown Defendants should have been on notice they were violating clearly established law when they allegedly ignored his suicidal threats and delayed getting him medical care after he cut himself.  Therefore, qualified immunity bars Plaintiff's claims against Defendants.  Accordingly, Defendants are entitled to summary judgment, and I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment.[2]

### III.     Plaintiff's Claims for Injunctive Relief

In his Complaint, Plaintiff requests the Warden "make a policy ordering all CO's, Sgt., and LTs to call for help as soon as they see that someone has cut or is hanging."  Doc. 1 at 7.  Defendants move to dismiss Plaintiff's claims for injunctive relief.  Doc. 49-2 at 10–11.

---

[2]     The Court declines to address whether Defendants' conduct violated Plaintiff's Eighth Amendment rights, because, even if there were a violation, Plaintiff fails to meet his burden in showing the right was clearly established.

As an initial matter, Plaintiff's claims for injunctive relief did not survive frivolity review. The Court dismissed all claims against Warden Allen, the only named policymaker at Georgia State Prison. Doc. 23. Instead, the only claims which remained after frivolity review were claims for monetary damages against Defendants Dugger, Hamilton, Heard, and Patton, who do not have policy-making authority. Id.

Even if Plaintiff's claims for injunctive relief remain pending, they still fail for other reasons. First, Plaintiff no longer resides at Georgia State Prison and, instead, is incarcerated at Phillips State Prison. Doc. 16. "The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief." McKinnon v. Talladega County, 745 F.2d 1360, 1363 (11th Cir. 1984); see Robbins v. Robertson, 782 F. App'x 794, 800 (11th Cir. 2019) (noting "an injunction directing his former prison officials to provide Plaintiff with a particular diet would provide Plaintiff with no relief"). Thus, Plaintiff's claims for injunctive relief are moot given his transfer.

Moreover, Plaintiff's claims for injunctive relief fail under the Prison Litigation Reform Act ("PLRA"). "Under the Prison Litigation Reform Act (PLRA), a court cannot order prospective relief addressing prison conditions unless it 'finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.'" Braggs v. Dunn, 383 F. Supp. 3d 1218, 1251 (M.D. Ala. 2019) (quoting 18 U.S.C. § 3626(a)(1)(A)). Granting Plaintiff's request for a policy dictating prison officials' response to inmate self-harm and suicide would force the Court to intervene in prison policy. Further, the injunction Plaintiff requests appears to be an effort to require prison officials to not act deliberately indifferent to inmates' serious medical needs. But this Court cannot issue an injunction simply requiring Defendants

(and other prison officials) to follow the law.  See Elend v. Basham, 471 F.3d 1199, 1209 (11th Cir. 2006) ("It is well-established in this circuit that an injunction demanding that a party do nothing more specific than 'obey the law' is impermissible.").  For these reasons, I **RECOMMEND** the Court also dismiss any claims for injunctive relief that remain pending.

IV.    **Leave to Appeal** *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.  Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues now.  See Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's claims and Defendants' Motion for Summary Judgment, there are no non-frivolous issues to raise on appeal, and an appeal on these claims

11

would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

Because Defendants are entitled to qualified immunity, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment, **DISMISS** Plaintiff's claims for injunctive relief, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment, and **DENY** Plaintiff *in forma pauperis* status on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint or other filing must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); <u>Harrigan v. Metro Dade Police Dep't Station #4</u>, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  <u>Harrigan</u>, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United

States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 30th day of June, 2021.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA